# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA BROOKE, | Case No.: 1:17-cv-01583 - LJO - JLT |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT |
| v. | |
| C & S CHONG INVESTMENT CORPORATION, a California corporation dba La Quinta Inn Bakersfield North, | (Doc. 8) |
| Defendant. | |

Theresa Brooke asserts C & S Chong Investment Corporation, doing business as La Quinta Inn Bakersfield North, is liable for violations of Title III of the Americans with Disabilities Act and California law by not having an accessible Jacuzzi at its hotel. (*See* Doc. 1) Plaintiff now seeks the entry of default judgment against Defendant, as well as an award of fees and costs related to this action. (Doc. 8) For the following reasons, the Court recommends Plaintiff's motion for default judgment be **GRANTED** in the modified amount of $6,600.00.

## I.     Background and Factual Allegations[1]

Plaintiff is "legally disabled, confined to a wheel chair, and is therefore a member of a protected class under the ADA." (Doc. 1 at 1, ¶ 1) Plaintiff, a resident of Arizona, is an "avid traveler[] to

---

[1] The factual assertions of Plaintiff are taken as true because default has been entered against the defendant. *See Pope v. United States,* 323 U.S. 1, 22 (1944)

1

California," and visited the state "numerous times this year." (*Id.*, ¶¶ 1, 24) She reports she "prefers the use of the hotel swimming pool and Jacuzzi, as both help soothe her arthritic pain." (*Id.* at 5, ¶ 25) According to Plaintiff, "if a hotel has pool facilities, lack of access to the pool facilities is a non-starter for her if she is to book a room," because "it is impossible for Plaintiff to enter a swimming pool or Jacuzzi" without a pool lift. (*Id.*, ¶¶ 25-26)

In February 2017, Plaintiff visited Bakersfield and went to La Quinta Inn Bakersfield North to book a room. (Doc. 1 at 5, ¶ 27) Plaintiff reports that "[p]rior booking the room, [she] was allowed to look at the hotel pool area to ensure that there was disability access for both the pool and Jacuzzi to ensure she could utilize the pool facilities while lodging at Defendant's hotel." (*Id.* at 5-6, ¶ 27) However, she found there was not a pool lift at the Jacuzzi and "was deterred from lodging at Defendant's hotel." (*Id.* at 6, ¶ 27) Therefore, Plaintiff "decided to not book a room." (*Id.*)

Plaintiff contends she "has frequented the location of Defendant's hotel in the past and intends to travel there again in the near future for business or pleasure, including scheduled trips for December of [2017] and in March 2018." (Doc. 1 at 6, ¶ 30) She asserts that she "will lodge at Defendant's hotel for one of her upcoming trips if the barriers complained of herein are removed." (*Id.*, ¶ 31)

Based upon these facts, Plaintiff contends that the hotel owners are liable for violations of Title III of the Americans with Disabilities Act of 1990; California's Unruh Civil Rights Act, Cal. Civil Code §§ 51, 52; and California Disabled Persons Act, Cal. Civil Code §§ 54-54.3. (Doc. 1 at 7-12) Plaintiff seeks "a permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to bring its pools into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the pools are fully accessible to, and independently usable by, disabled individuals." (*Id.* at 9-10, ¶ 46(b)) Further, Plaintiff's prayer for relief includes a request that the Court "[o]rder closure of the Defendant's place of public accommodation until Defendant has fully complied with the ADA." (*Id.* at 10, ¶ 46(e))

Defendant was served with the summons and complaint on January 9, 2018 (Doc. 4), but failed to respond within the required by the Federal Rules of Civil Procedure. Upon application of Plaintiff, default was entered against Defendant on February 1, 2018. (Docs. 5-6) Plaintiff now seeks the entry of default judgment against Defendant. (Doc. 8) She seeks statutory damages in the amount of

$5,000.00; attorney fees in the amount of $3,600.00; and costs in the amount of $400.00 for a total award of $9,000.00. (*Id.* at 2) Plaintiff also seeks injunctive relief ordering removal of the architectural barrier. (*Id.*)

**II.     Legal Standards Governing Entry of Default Judgment**

After default is entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed. R. Civ. P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

**III.    Discussion and Analysis**

Entry of default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit determined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

**A.     Prejudice to Plaintiff**

The first factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and the potential prejudice to the plaintiff weighs in favor of granting a default judgment. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages. *Id.*; *see also Mircosoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1236-37 (E.D. Cal. 2008) ("Plaintiff will be prejudiced if default judgment is denied

because plaintiff will be without other recourse for recovery"). Because Plaintiff has no other means to recover damages from C & S Chong Investment Corporation, she would be prejudiced if default judgment is not granted. Thus, this factor weighs in favor of granting the motion.

**B. Merits of Plaintiff's claims and the sufficiency of the complaint**

Given the kinship of these factors, the Court considers the merits of Plaintiff's substantive claims and the sufficiency of the complaint together. *See Premier Pool Mgmt. Corp. v. Lusk*, 2012 U.S. Dist. LEXIS 63350, at *13 (E.D. Cal. May 4, 2012). The Ninth Circuit has indicated that, when combined, the factors require a plaintiff to "state a claim on which the plaintiff may recover." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175.

1. The Americans with Disabilities Act

Title III of the ADA prohibits discrimination by public accommodations, and provides in relevant part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc*., 481 F.3d 724, 730 (9th Cir. 2007). Discrimination under Title III includes "a failure to remove architectural barriers … in existing facilities … where such removal is readily achievable." 42 U.S.C., § 12182(b)(2)(A)(iv). To state a claim for discrimination due to an architectural barrier, a plaintiff must also establish "(1) the existing facility at the defendant's place of business [or property] presents an architectural barrier prohibited under the ADA and (2) the removal of the barrier is readily achievable." *Johnson v. Beahm*, 2011 WL 5508893 *2 (E.D. Cal. Nov. 8, 2011) (quoting *Parr v. L&L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1085 (D. Haw. 2000)).

*a. Plaintiff's disability*

The ADA defines disability as "a physical or mental impairment that substantially limits one or

more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities as defined by the ADA include walking and standing. *Id.*, § 12102(2)(A). Plaintiff alleges she "ambulates with the aid of a wheelchair due to the loss of a leg." (Doc. 1 at 2, ¶ 1) Given that Plaintiff's physical impairment limits her ability to ambulate, the Court finds she is disabled within the meaning of the ADA.

### b. *Defendant's ownership of a place of public accommodation*

Plaintiff contends "C & S Chong Investment Corporation (Defendant), owns and/or operates and does business as the hotel, La Quinta Inn Bakersfield North located at 8858 Spectrum Park Way, Bakersfield, California 93308." (Doc. 1 at 2, ¶ 2) As Plaintiff argues, "[a] hotel is a place of public accommodation" subject to Title III of the ADA. *See Civil Rights Educ. & Enforcement Ctr. v. Hospitality Properties Trust* 867 F.3d 1093, 1097 (9th Cir. 2017) (citing 42 U.S.C. § 12181(7)(A)). Accordingly, Plaintiff has established Defendants is the owner of a place of public accommodation.

### c. *Denial of access and presence of architectural barriers*

The next two elements of an ADA architectural barriers claim require the Court to evaluate whether architectural barriers worked to discriminate against the plaintiff on account of physical disability. *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) ("an ADA plaintiff suffers an injury-in-fact either because discriminatory architectural barriers deter him from returning to a facility or because they otherwise interfere with his access to the facility").

Plaintiff contends she visited La Quinta Inn Bakersfield North and "saw that there were no pool lifts of disability access at the hotel Jacuzzi." (Doc. 1 at 6, ¶ 27) As Plaintiff observes, "Section 242.2 of the 2010 Standards of Accessible Design require that hotel pools and Jacuzzi have access to the disabled." (Doc. 8 at 9) Because Plaintiff alleges she did not see a method for disability access to the Jacuzzi, Plaintiff has met her burden of identifying architectural barriers that denied her full and equal access to the business.

### d. *Removal of the barriers*

Finally, a plaintiff must establish that removal of an architectural barrier "is readily achievable" to state a cognizable claim for a violation of the ADA. *See* 42 U.S.C. § 12182(b)(2)(A)(iv); *Johnson*, 2011 WL 5508893 at *2. The term "readily achievable" means it is "easily accomplishable and able to be carried out without much difficulty or expense." *Id.*, § 12181(9). In general, whether removal "is

5

readily achievable" requires the Court to consider:

>   (A)  the nature and cost of the action needed under this Act;
>
>   (B)  the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
>
>   (C)  the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
>
>   (D)  the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

42 USCS § 12181(9).

Although Plaintiff does not offer any information regarding these factors for many of the disability access methods for pools and spas, the federal regulations make it clear that the barrier identified by Plaintiff are of the type presumed to be readily removable. Under 28 C.F.R. § 36.304(c), examples of disability access for pools and spas include lifts, sloped entries, transfer walls, transfer systems, and pool stairs. *See* 36 C.F.R. § 1191 app. B §§ 242.2, 242.4. Moreover, Plaintiff's allegation that the removal of barriers is readily achievable is sufficient at this juncture. *See Johnson v. Hall*, 2012 WL 1604715 *3 (E.D. Cal. May 7, 2012) (finding the plaintiff's allegation that the barriers were "readily removable" and that he sought "injunctive relief to remove all readily achievable barriers" satisfied his burden); *Johnson v. Beahm*, 2011 WL 5508893, *3 (E.D. Cal. Nov. 8, 2011) (holding the plaintiff's allegation that architectural barriers were readily removable was sufficient because it was accepted as true on default); *see also Sceper v. Trucks Plus*, 2009 WL 3763823 *4 (E.D. Cal. Nov. 3, 2009) (granting default judgment on an ADA claim although the plaintiff did "not specifically allege that removal of barriers was readily achievable," and pled instead that the defendants "were required to remove architectural barriers").

Accordingly, the Court finds curing the architectural barrier identified by Plaintiff at La Quinta Inn Bakersfield North is "readily achievable" within the meaning of the ADA.

### e. Conclusion

Based upon the foregoing, the Court finds that Plaintiff has met her burden of stating a prima

facie discrimination claim in violation of Title III of the ADA.

2.  Violations of California Law

Significantly, any violation of the ADA also is a violation of California's Unruh Civil Rights Act. Cal. Civ. Code § 51(f); *see also Molski,* 481 F.3d at 731 ("Any violation of the ADA necessarily constitutes a violation of the Unruh Act"). Likewise, the California Disabled Persons Act was "amended to provide that a violation of the ADA constitutes a violation of [its] provisions." *See Pickern v. Best Western Timber Cove Lodge Marina*, 194 F.Supp.2d 1128, 1131 (E.D. Cal. 2002). Because Plaintiff alleges a cognizable ADA claim, she has also established the defendant is liable for violating the Unruh Act the California Disabled Persons Act.

**C.   Sum of money at stake**

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of [a] [d]efendant's conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176. Thus, the Court must "assess whether the recovery sought is proportional to the harm caused by [a] defendant's conduct." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010). "Default judgment is disfavored when a large sum of money is involved." *See Moore v. Cisneros*, 2012 U.S. Dist. LEXIS 177044, at *5 (E.D. Cal. Dec. 12, 2013).

Plaintiff seeks a judgment against the defendants in the amount of $5,000, plus attorney fees and costs. (Doc. 8 at 12) This amount represents the $4,000 statutory minimums under Cal. Civ. Code §§ 52 and 54.3 for violations of the Unruh Act and the California Disabled Persons Act. Because the statutes contemplate such an award, the amount sought is proportional to the harm caused by the defendants' violations. Therefore, therefore, this factor does not weigh against entry of default judgment.

**D.   Possibility of dispute concerning material facts**

There is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts allegations in Plaintiff's Complaint as true and (2) though properly served, the defendant failed to appear. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177; *see also Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood

that any genuine issue of material fact exists"). Therefore, this factor does not weigh against default judgment.

### E. Whether default was due to excusable neglect

Generally, the Court will consider whether a defendant's failure to answer is due to excusable neglect. *See Eitel*, 782 F.2d at 1472. Defendant was served with the Summons and Complaint. (*see* Doc. 4) and was notified of the filing of the motion for default judgment (Doc. 8-1 at 3). Given these facts, it is unlikely the failure to respond was the result of excusable neglect. *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint, the notice of entry of default" and received the moving papers in support of the motion for default judgment).

### F. Policy disfavoring default judgment

Default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against default judgment because Defendant's failure to appear before the Court makes a decision on the merits impractical.

### G. Conclusion

Based upon the foregoing, the Court finds the *Eitel* factors weigh in favor of granting default judgment, and recommends the motion for default judgment be **GRANTED**.

## IV. Relief Requested

Plaintiff seeks injunctive relief, statutory damages, and attorney fees and costs for the violations under the ADA, Unruh Act, and California Disabled Persons Act. (Doc. 8 at 12-15) Unlike the ADA, the Unruh Act and California Disabled Persons Act permit the recovery of monetary damages. *See Molski*, 481 F.3d at 731; Cal. Civ. Code §§ 52, 54.3.

### A. Statutory Damages

Plaintiff seeks statutory damages for the defendant's violations of the Unruh Act and California Disabled Persons Act. (Doc. 8 at 12) The Unruh Act provides that a plaintiff subjected to discrimination is entitled to recover $4,000 for each occasion on which she was denied equal access. Cal. Civ. Code § 52(a). Similarly, the California Disabled Persons Act provides for statutory damages

in the amount of $1,000.00. Cal. Civ. Code § 54.3. "Proof of actual damages is not a prerequisite to recovery of statutory minimum damages." *Hubbard v. Rite Aid Corp.*, 433 F.Supp.2d 1150, 1170 (S.D. Cal. 2006) (citing *Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000)).

To recover statutory damages, a plaintiff must only show that she was "denied full and equal access," not that she was "wholly excluded from enjoying Defendant's services." *Id*. (citing *Hubbard v. Twin Oaks Health and Rehab. Center*, 408 F.Supp.2d 923, 932 (E.D. Cal. 2004). Pursuant to Cal. Civ. Code § 55.56(b), "A plaintiff is denied full and equal access only if the plaintiff personally encountered the violation on a particular occasion, or the plaintiff was deterred from accessing a place of public accommodation on a particular occasion." Cal. Civ. Code § 55.56(b). A plaintiff shows she was deterred from accessing a place of public accommodation where:

> (1) The plaintiff had actual knowledge of a violation or violations that prevented or reasonably dissuaded the plaintiff from accessing a place of public accommodation that the plaintiff intended to use on a particular occasion.
>
> (2) The violation or violations would have actually denied the plaintiff full and equal access if the plaintiff had accessed the place of public accommodation on that particular occasion.

Cal. Civ. Code § 55.56(d). Thus, a plaintiff may recover statutory damages even if she does not enter a facility. *Botosan*, 216 F.3d at 835.

Plaintiff asserts that she went to La Quinta Inn Bakersfield North in February 2017 and "personally encountered" access barrier identified in her complaint. (Doc. 1 at 5-6, ¶ 27) She asserts she "saw that there were no pool lifts or disability access at the hotel Jacuzzi," and due to this "was deterred from lodging at Defendant's hotel." (*Id.*) The Court finds this is sufficient to establish that Plaintiff personally encountered barriers identified in the complaint, and she was deterred from using the services of a place of public accommodation. Accordingly, an award of the requested statutory minimums under the Unruh Act and California Disabled Persons Act is appropriate, and the Court recommends Plaintiff's request for an award in the amount of $5,000.00 be **GRANTED**.

**B.    Injunctive Relief**

The court may grant injunctive relief for violations of California law under Civil Code § 52.1(h). To be entitled to injunctive relief under 42 U.S.C. § 12188(a)(2), a plaintiff must show the defendants have violated the Americans with Disabilities Act Accessibility Guidelines. Where the

plaintiff meets this burden, "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities. . . ." *Id.; see also Moeller v. Taco Bell*, 816 F.Supp.2d 831, 859 (N.D. Cal. 2011).

A plaintiff is not required to satisfy other prerequisites generally necessary for injunctive relief since "[t]he standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief." *Moeller*, 816 F.Supp.2d at 859 (quoting *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175-76 (9th Cir. 2010)). Thus, injunctive relief is proper when architectural barriers at a defendant's establishment violate the ADA and removal of the barriers is readily achievable. *See, e.g., Moreno v. La Curacao*, 463 Fed. App'x. 669, 670 (9th Cir. Dec. 23, 2011); *Johnson*, 2011 WL 2709365 *3; *Sceper*, 2009 WL 3763823 at *4.

As discussed above, Plaintiff has stated a viable Title III discrimination claim, including that the removal of the barrier at La Quinta Inn Bakersfield North is readily achievable. Injunctive relief compelling Defendant to provide disability access to the Jacuzzi at La Quinta Inn Bakersfield North in accordance with the ADAAG is appropriate. *See* 42 U.S.C. § 12188(a)(2) (authorizing injunctions under the ADA).

**C. Request for Fees and Costs**

Plaintiff also seeks an award of attorney's fees and costs in the amount of $3,600.00 under both Title III of the ADA and California law. (Doc. 8 at 15) Accordingly, the Court must determine whether the fees and costs sought by Plaintiff are reasonable.

In general, the Court determines a reasonable fee award "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate." *Florida v. Dunne*, 915 F.2d 542, 545 n. 3 (9th Cir. 1990) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

1. Time expended

A fee applicant "bears the burden of … documenting the appropriate hours expended."

*Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). Plaintiff's counsel, Peter Strojnik, reports he spent a total of 4.8 hours of time on this action, including:

> (1) drafting of complaint (00.60); (2) conducted the research and due diligence regarding ownership of the subject property, which is a very crucial part of ADA cases due to the prevalence of many owners attempting to disguise ownership (01.00); (3) drafted the Petition for Entry of Default by Clerk (00.10); (4) multiple telephone calls and fax to Defendant (00.60); and, (5) researched and drafted the instant Application for Entry of Default Judgment (02.50).

(Doc. 8-1 at 2-3, Strojnik Decl. ¶ 6) The Court finds the time expended on the tasks related to this action was reasonable.

### 2. Hourly rate

Attorney fees are to be calculated with "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 and n.11 (1984). The "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Thus, when a case is filed in this Court, "[t]he Eastern District of California, Fresno Division, is the appropriate forum to establish the lodestar hourly rate …." *See Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011). Mr. Strojnik seeks an hourly rate of $750 for his work on this action (Doc. 8-1 at 2, ¶ 5), which is not in accord with the market rate for the Fresno Division.[2]

As the Ninth Circuit observed, "determining an appropriate 'market rate' for the services of a lawyer is inherently difficult …." *Camacho*, 523 F.3d at 979 (quoting *Blum*, 465 U.S. at 895 n. 11). A reasonable rate accounts for the lawyer's "experience, skill, and reputation," and the rates awarded in the legal community in which the Court sits. *Id.*; *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). In evaluating hourly rates, the Court may consider "[a]ffidavits of the plaintiffs' attorneys and other attorneys regarding fees in the community" and hourly rates paid in other cases. *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The

---

[2] The Court may apply "rates from outside the forum… 'if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)). Plaintiff does not argue local counsel was unwilling or unable to prosecute her claims for violations of Title III of the ADA or California's Unruh Act. Therefore, the hourly rate must be aligned with this legal community.

Court may apply "either current or historically prevailing rates," though "the use of current rates may be necessary to adjust for inflation if the fee amount would otherwise be unreasonable." *Schwarz*, 73 F.3d at 908.

Previously, this Court observed: "Courts within the Eastern District of California's Fresno division have found that a reasonable range of attorney's fees is between $250 and $380, with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." *Barkett v. Sentosa Props. LLC*, 2015 WL 5797828 (E.D. Cal. Sept. 30, 2015) (internal quotation marks, citation omitted); *see also Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1134 (E.D. Cal. 2011) (awarding hourly rates of $350.00 for attorney with 14 years of experience, $275.00 for attorney with 11 years of experience, and $295.00 for contract attorney with 18 years of experience in employment action). Accordingly, the Court must consider the "experience, skill, and reputation" of Mr. Strojnik to determine an hourly rate that aligns with these rates within the Fresno Division. *See Camacho*, 523 F.3d at 979

Mr. Strojnik reports that he has "been licensed to practice law and [has] practiced law for a period of eleven years," during which he has "focused on civil rights litigation, with a primary focus on ADA litigation and Title VII of the Civil Rights Act litigation." (Doc. 8-1 at 2, Strojnik Decl. ¶ 3) According to Mr. Strojnik, he has "filed at least 600 Title III ADA lawsuits." (*Id.*, ¶ 4) He contends his "billing rate for ADA related work is $750.00 per hour, which is a fair rate for attorneys with similar experience and expertise in this very nuanced area of law." (*Id.*, ¶ 5) (emphasis omitted) In addition, Mr. Strojnik contends his "rate is supported by the numerous cases … filed pursuant to the ADA, [his] appellate work in the area of Title III litigation, [his] noteworthiness that has led other law firms to utilize [his] knowledge to open civil rights divisions within their firm[s], and [his] overall dedication to the rights of the disabled." (*Id.*)

On the other hand, while Mr. Strojnik reports the number of cases he has filed, he does not acknowledge the significant number of cases where courts have questioned his client's standing to pursue the claims presented, or the number of cases voluntarily dismissed without the plaintiff doing any more than filing a complaint. For example, the Central District of California questioned the plaintiff's standing in actions filed by Mr. Strojnik where she did not visit the hotels identified. *See*

*Brooke v. Peterson*, 185 F.Supp. 3d 1203 (2016). Mr. Strojnik appeared at a hearing, but "failed to accurately answer the[] Court's questions, [and]… expressed extreme disrespect to the Court throughout the hearing." *Id.* at 1206. The Court determined his client lacked standing under the ADA and dismissed several cases as a result. *Id.* at 1212-13. Similarly, in 30 cases filed in the Eastern District by Mr. Strojnik as counsel for Theresa Brooke, this Court ordered the plaintiff to show cause why the matters should not be dismissed for lack of standing.[3] (*See, e.g., Brooke v. H&K Partnership*, 2016 U.S. Dist. LEXIS 148572 (E.D. Cal. Oct. 26, 2016). The Arizona District Court also recognized that Mr. Stojnik filed a number of ADA cases in which the plaintiff lacked standing. *See Advocates for Individuals with Disabilities LLC v. WSA Props., LLC* 210 F.Supp. 3d 1213, 1223 (2016) (citing *Peterson*, 185 F.Supp. 3d 1203; *Brooke v. Kalthia Grp. Hotels*, 2015 WL 7302736 (S.D. Cal. Nov. 18, 2015)). In light of the repeated failure of Mr. Strojnik to establish standing on behalf of his clients—a fundamental issue in ADA cases—the experience of Mr. Strojnik in practicing within the federal courts does not weigh heavily in favor of the hourly rate requested.

Previously, this Court previously awarded a requested hourly rate of $300 to local counsel with 15 years of experience, finding this amount was appropriate for the Fresno Division for an ADA case. *See Trujillo v. Singh,* 2017 WL 1831941 at *2-3 (E.D. Cal. May 8, 2017). Likewise, the Sacramento Division of the Eastern District previously rejected an hourly rate of $425 for an attorney who had "been in practice for about 19 years with a practice dedicated exclusively to disability-related issues." *Johnson v. Patel*, 2017 WL 3953949 at *5 (E.D. Cal. Sept. 8, 2017)[4]. Instead, the Court "determined that an hourly rate of $300.00 was appropriate for plaintiff's counsel, as a partner with significant experience and expertise, in a routine disability access case." *Id.*

Considering skill, reputation, and the eleven years of experience possessed by Mr. Strojnik, the Court finds the hourly rate of $250 is appropriate. *See Singh*, 2017 WL 1831941 at *2-3 (awarding $300 an hour to an attorney with 15 years of experience); *Trujillo v. Lakhani*, 2017 WL 1831942 at * (E.D. Cal. May 8, 2017) (rejecting the requested rate of $350 for an attorney who practiced for 34

---

[3] Plaintiff did not attempt to show cause or establish standing in any of the cases in response to the Court's order.
[4] Although this determination was made by the Sacramento Division, it demonstrates the hourly rates requested here do not align with those in the Eastern District.

13

years, with 12 years of experience "focused almost exclusively on ADA cases, representing both plaintiffs and defendants in hundreds of actions" and awarding fees at the rate of $300).

### 3. Lodestar calculation

With the hourly rate adjustment set forth above, the lodestar for the 4.8 hours that Mr. Strojnik expended in this action is $1,200.00. Based upon the prior survey of attorney fees awarded in the Fresno Division and the Court's own knowledge, this fee award is reasonable for the experience, skill, and reputation of Mr. Strojnik. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (concluding "the district court did not abuse its discretion either by relying, in part, on its own knowledge and experience" to determine the reasonableness of a fee request). Therefore, the Court recommends Plaintiff's request for attorney fees be **GRANTED** in the modified amount of $1,200.00.

### 4. Costs

Both the ADA and Unruh Act authorize the award of costs for an action. *See* 42 U.S.C. § 12205; Cal. Civ. Code § 52(a). Mr. Strojnik reports that he "paid out $400.00 in filing fees, which is evidenced on the docket." (Doc. 8-1 at 3, Strojnik Decl. ¶ 6) These litigation expenses may be awarded as costs to Plaintiff. *See Alvarado v. Nederend,* 2011 WL 1883188 at *10 (E.D. Cal. Jan. May 17, 2011) (explaining "filing fees, mediator fees . . . , ground transportation, copy charges, computer research, and database expert fees" are typically identified as litigation costs); *Moore*, 2017 WL 1079753 at *8 (holding a plaintiff "may recover expenses for postage, courier services, and online research under the ADA"). Accordingly, the Court recommends Plaintiff's request for $400.00 in costs be **GRANTED**.

## V. Findings and Recommendations

The *Eitel* factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court. *See Aldabe*, 616 F.2d at 1092. Based upon the foregoing, the Court **RECOMMENDS**:

1. Plaintiff's motion for default judgment be **GRANTED**;
2. Plaintiff be **AWARDED** statutory damages in the amount of $**5,000.00**;
3. Plaintiff be **AWARDED** attorney's fees and costs in the modified amount of $**1,600.00**;
4. Plaintiff be **GRANTED** an injunction requiring Defendant to provide

14

install disability access at its hotel Jacuzzi, at the La Quinta Inn Bakersfield North, in accordance with the Americans with Disabilities Act of 1990 (ADA) and the Americans with Disabilities Act Accessibility Guidelines (ADAAG).

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days of the date of service of these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

    Dated: **April 9, 2018**                    **/s/ Jennifer L. Thurston**
                                                            UNITED STATES MAGISTRATE JUDGE